UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


William Leonard Pickard, )

         Plaintiff   )

v.                  )  No. 4:11-cv-00443-DCB

Department of Justice,  )

         Defendant   )

_____ )


SECOND AMENDED COMPLAINT


This Second Amended Complaint incorporates new facts arising from Defendant's July 1, 2011 partial release of records responsive to the request. All causes of action remain the same as in the Amended Complaint (Doc. 1).


1. This is an action under the Freedom of Information Act and the Privacy Act 5 USC 552(a). Plaintiff William Leonard Pickard seeks injunctive and other appropriate relief for the processing and release of records requested by Plaintiff from the Drug Enforcement Administration.


2. Plaintiff seeks disclosure of records pertaining to DEA Agents Manual Sec. 6612.13 and the eleven risk assessment factor therein concerning establishment of DEA informants.

3. This Court has both subject matter jurisdiction and personal jurisdiction over the parties subject to 5 USC 552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 USC 1331. Venue lies in this district by determination of Magistrate Judge Beeler in the transferor district (see Pickard v. DOJ, C 10-5253 LB, N.D. Cal.)(Pickard II).

4. Plaintiff is a citizen of California, domiciled in and a resident of the Northern District of California for over 40 years. Venue for Plaintiff based on residence in the Northern District of California prior to incarceration has been established in the unrelated matter of Pickard v. DOJ (3:06-cv-00185-CRB), reversed and remanded to the district court by the 9th Circuit in Pickard v. DOJ, 2011 U.S. App. LEXIS 15397 (July 27 2011, 9th Cir.)(Pickard I).

5. The events giving rise to this complaint occurred in San Francisco, viz.:

a. in a federal proceeding, San Francisco DEA agent Karl Nichols testified about risk assessments and submitted evidence that San Francisco DEA agents G/S (RAC) Steven Horn and ASAC Lowry Leong (ret.) in 2000-2001 prepared a risk assessment - "in compliance with DEA Agents Manual Section 6612.13" and the "eleven risk assessment factors" therein - concerning an informant controlled by the San Francisco DEA office.

b. Agent Nichols thereafter submitted this risk assessment to the district court, with the risk assessment entered into the record and a copy made available to defense counsel.

c. The district court then described the risk assessment and relied upon it in various substantive decisions at trial and in 2255 proceedings in 2010. The Tenth Circuit relied on the district court's conclusions. The 9th Circuit also relied on the "DEA informant file" (containing the "risk assessment") in deciding Pickard I on July 27, 2011.

### PARTIES

6. Plaintiff is incarcerated at USP Tucson in Arizona.

7. Defendant Department of Justice and its component Drug Enforcement Administration are both "agencies" within the meaning of 5 USC 552(f).

### FACTS

8. On April 7, 2010 a FOIA request was made to DEA for the following records:

Any an all records pertaining to the implementation and use of DEA Agents Manual Sec. 6612.13, including but not limited to:

a. the eleven risk assessment factors described therein concerning potential or prior DEA informants, cooperating

defendants/witnesses, or sources of information;

b. the specific DEA form and formatting utilized or required for compliance with Sec. 6612.13 and the risk assessment factors;

c. copies of Sec. 6612.13 and the related risk assessment factors applicable in 2000-2001, and at any other time.

6. On April 22, 2010 DEA assigned Case Number 10-0068-F to the request.

7. On June 15, 2010 a request for a status check was made to DEA.

8. On August 16, 2010, in accord with the Open Government Act o 2007, a request was made to the National Archives and Records Administration (NARA) Office of Government Information Services (OGIS) for mediation of the request to DEA.

9. On September 9, 2010, a second request was made to NARA/OGIS concerning DEA's failure to provide records.

10. On November 5, 2010, after consulting with DEA, NARA/OGIS replied that the request was "assigned to a FOIA analyst for processing, and will be handled as expeditiously as possible."

11. Plaintiff filed a complaint on November 18, 2010. A First

Amended Complaint (FAC) was filed on March 17, 2011. On July 1, 2011 - almost eight (8) months after filing of the complaint - Defendant released limited responsive material (appended as Exhibit 1).

12. Venue was transferred to this district on July 8, 2011. On August 8, 2011 this Court ordered Defendant to answer the FAC.

13. On August 18, 2011, in an effort to address missing pages in the partial release and to reduce the burden on DEA by narrowing the scope of the search, Plaintiff attempted to contact by telephone DEA FOI Specialist A. Hertel as referred by Katherine L. Myrick, Chief of the DEA FOIA/PA Unit. Ms. Hertel declined the call. A detailed letter referencing the missing records and narrowing the scope of the request was sent to Chief Myrick.

14. On August 18, 2011 Plaintiff also attempted to meet and confer by telephone with opposing counsel AUSA Hernandez to obtain stipulations on the missing documents and the narrowing of the requests, but the call was declined.

15. Plaintiff thereafter attempted to meet and confer with AUSA Hernandez by fax on August 23, 2011 and by letter - similar to that sent to Chief Myrick - to stipulate to these matters (see Exhibit 2, issues 2-12).

16. Defendant continues to violate the applicable administrative remedies.

17. Plaintiff has exhausted the applicable administrative remedies.

18. Defendant has wrongfully withheld requested records from Plaintiff.

CAUSES OF ACTION

Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records

19. Plaintiff repeats and realleges paragraphs 1-18.

20. Defendant wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for the processing of FOIA requests and by failing to provide the requested records promptly.

21. Plaintiff has exhausted the applicable administrative remedies with respect to the Defendant's wrongful withholding of the requested records.

22. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

REQUESTED RELIEF

WHEREFORE, Plaintiff prays that this Court order Defendant to release immediately all requested records.


Respectfully submitted,

William Leonard Pickard

FRN 82687-011

POB 24550

Tucson, AZ 85734

August 24, 2011

EXHIBIT 1



**U.S. Department of Justice**
Drug Enforcement Administration
FOI/Records Management Section
8701 Morrissette Drive
Springfield, Virginia 22152

JUL 0 1 2011

Case Number: 10-00678-F

Subject: ANY AND ALL RECORDS PERTAINING TO THE IMPLEMENTATION AND USE
OF DEA AGENTS'S MANUAL SEC 6612.13, ETC.

William L. Pickard
Reg. No. 82687-011
USP Tucson
P.O. Box 24550
Tucson, AZ 85734

Dear Mr. Pickard:

This letter responds to your Freedom of Information/Privacy Act (FOI/PA) request dated
April 07, 2010, addressed to the Drug Enforcement Administration (DEA), Freedom of
Information/Privacy Act Unit (SARF), seeking access to information regarding the above subject.

The processing of your request identified certain materials that will be released to you.
Portions of the documents not released are being withheld as they are not responsive to your
request.

If you have any questions regarding this letter, you may contact FOI Specialist A. Hertel on
202-307-4285.

Sincerely,

*Katherine Myrick*

Katherine L. Myrick, Chief
Freedom of Information/Privacy Act Unit
FOI/Records Management Section

Number of pages withheld:   0

Number of pages released:   20

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

## U.S. DEPARTMENT OF JUSTICE
## DRUG ENFORCEMENT ADMINISTRATION

### AGENTS MANUAL

### SUPPLEMENTAL TRANSMITTAL

**DATE:** 6-28-01

**TRANSMITTAL NUMBER:** 01-3

### TABLE OF CHANGES

| Remove | Identification Date | Insert | Explanation of Changes |
|---|---|---|---|
| Table of Contents 6612 | 09/10/98 | Table of Contents 6612 & 6613 | These sections provide the current policies and procedures for the Confidential Source and the Sources of Information Programs. |
| Section 6612 | 09/10/98 | Section 6612 | |
| Ex. 1/661 | 09/10/98 | Ex. 1/661 | |
| Ex. 2/661 | 09/10/98 | Ex. 2/661 | |
| Ex. 3/661 | 09/10/98 | Ex. 3/661 | |
| | | Section 6613 | |

Note:  Cross out
6613 on page xii
in the Table of Contents
that is cited Reserved.

_Joseph D. Keefe_

**Chief of Operations**

DISTRIBUTION:  H-1,2,3C,3D,4,5
F-1 through 7

**DEA SENSITIVE**

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

**U.S. DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION**

**AGENTS MANUAL**

**SUPPLEMENTAL TRANSMITTAL**

|  |  |
|---|---|
| **DATE:** | 4-24-02 |
| **TRANSMITTAL NUMBER:** | 02-2 |

### TABLE OF CHANGES

| Remove | Identification Date | Insert | Explanation of Changes |
|---|---|---|---|
| Table of Contents 6612 – 6613 | 6-28-01 | Table of Contents 6612 & 6613 | This section has been revised to provide the current policies and procedures for the Confidential Sources program. |
| Sects. 6612 –6613 | 6-28-01 | Sects. 6612 –6613 | |
| Ex. 1/661 | 6-28-01 | Ex. 1/661 | |
| Ex. 2/661 | 6-28-01 | Ex. 1/661 | Also, this issuance supersedes any other documentation addressing this program. |
| Ex. 3/661 | 6-28-01 | Ex. 1/661 | |

**Administrator
Asa Hutchinson**

**DISTRIBUTION:  H-1,2,3C,3D,4,5
F-1 through 7**

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

6612.12

Not Responsive

6612.13 **Risk Assessment Defined.** A Risk Assessment is a formal process that weighs the liabilities of a prospective CS against the potential benefit that could accrue to DEA. The Risk Assessment is conducted by the Controlling Investigator at the time the CS is first considered for establishment and is reviewed by higher level authorities until establishment is approved. Risk Assessments must also be conducted whenever information is received that alters the balance of "risk versus benefit." The Risk Assessment process is described in detail in 6612.32.

Not Responsive

01-3  AGENTS MANUAL  6-28-01

**DEA SENSITIVE**

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

6612.32

Not Responsive

6612.32  Risk Assessment

A. <u>Controlling Investigators Responsibilities</u>.  Prior to establishing an individual as a CS, the Controlling Investigators will conduct a risk assessment of the individual to determine if the individual is suitable for use as a CS.  Controlling Investigators will utilize the following factors in determining the suitability of a CS:

1. Age;
2. Criminal history;
3. Involvement in any pending criminal investigation;
4. Danger to the public; criminal threat (Controlling Investigators assessment)

01-3  AGENTS MANUAL  6-28-01

DEA SENSITIVE

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

6612.32

5. Flight risk; risk that CS may compromise investigation (Controlling Investigators assessment)
6. U.S. residency status; alien status.
7. History of alcohol or substance abuse;
8. Relationship with an employee of any law enforcement agency;
9. The individual's status as a public official, law enforcement officer, member of the military, a representative of the news media, or party to privileged communications (e.g., a member of the clergy, a doctor, a lawyer);
10. Reliability, truthfulness, and motivation; relationship to target(s) of investigation.
11. Medical conditions/restrictions that may impact the utilization of the CS (e.g. heart condition, pregnancy, etc.).
12. Past or present performance as a CS for DEA or another agency; including prior record of any testimony (coordinate with OM).
13. The extent to which the CS's information can be independently corroborated.
14. Risk of physical harm to CS or CS's family/close associates as a result of information provided to DEA.

B. Suitability Statement. Upon completion of this assessment, a brief statement will be developed which evaluates the potential benefit of using the CS, as documented in the Initial Debriefing Report, and contrasts these benefits with any adverse information developed during the establishment process. (The statement will not detail the derogatory information). This statement will be included in the "Remarks Section" of the DEA-512. In addition, when it is anticipated that a CS will be utilized as part of an investigation that will be prosecuted in a court of law in the United States, or it is anticipated that the CS will testify in a U.S. court of law, the Case Agent must discuss the investigation and the CS utilization with the appropriate prosecutor. The Case Agent will document this consultation by adding the following statement to the DEA-6, Case Initiation Report or a subsequent investigative report under the heading Consultation with Prosecutor: "This investigation was discussed with _____(name/title of prosecutor) on _____(date) by _____(name of Controlling Investigator). The prosecutor has concurred in all material aspects of the use of this CS by DEA.

If after consultation with a prosecutor regarding the utilization of a CS, the Controlling Agent(s) and the prosecutor are at an impasse, the Controlling Agent (s) should contact Headquarters OM. OM will coordinate with CC any resolution or corrective action(s) to be taken.

C. Classification. The Controlling Investigators will classify the prospective CS as detailed below:

1. Approval Recommended. The benefits of utilizing the CS clearly outweigh any negative factors that may exist and the CS is recommended for utilization. The Controlling Investigators will then forward the complete CS package to the First Line Supervisor for approval.

**DEA SENSITIVE**

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

6612.32

2. <u>Disapproval</u>. The Controlling Investigators determine that the negative factor(s) associated with the possible utilization of the prospective CS clearly outweigh any possible benefits that may be obtained as a result of the CS cooperation. If this determination is made, the establishment process will be terminated.

D. <u>First Line Supervisor Responsibilities</u>. The First Line Supervisor will review the Initial Debriefing Report and the DEA-512, with the Suitability Statement prepared by the Controlling Investigators. The First Line Supervisor will then make a determination as to the suitability of utilizing the prospective CS as detailed below:

1. <u>Approved/Approval Recommended</u>. If the First Line Supervisor believes that the CS is suitable for establishment, and the CS is a Regular Use CS, the First Line Supervisor may then authorize the establishment. If the CS is a Defendant CS, Restricted Use CS, or a Protected Name CS, the First Line Supervisor will forward the package to the Second Line Supervisor with a recommendation for approval.

2. <u>Disapproval</u>. If the First Line Supervisor determines that the negative factor (s) clearly outweigh the potential benefits that would be gained through the use of the prospective CS, the First Line Supervisor will disapprove the Risk Assessment and the establishment process will be terminated.

E. <u>Second Line Supervisor Responsibilities</u>. The Second Line Supervisor will review all Defendant, Restricted Use, and Protected Name CS packages submitted by the First Line Supervisor.

1. <u>Approved/Approval Recommended</u>. The Second Line Supervisor will review the file of the prospective CS including the Debriefing Report, the DEA-512, criminal history, and the results of all other indices checks. If the Second Line Supervisor approves the Risk Assessment, and the Second Line Supervisor is authorized to approve the particular category of CS , the Second Line Supervisor will authorize the establishment, contingent upon the receipt of any other necessary concurrence(s). If the Second Line Supervisor is not authorized to approve the CS (domestic Protected Name CS or certain categories of Restricted Use CSs), the CS file will be forwarded to the appropriate SES level manager with a recommendation for approval.

2. <u>Disapproval</u>. If the Second Line Supervisor determines that the risks outweigh the possible benefits of utilizing the CS, the Second Line Supervisor will disapprove the Risk Assessment and the establishment process will be terminated.

F. <u>SES Level Manager Responsibilities</u>. The SES level manager will review all Risk Assessments referred by the Second Line Supervisor.

1. <u>Approval</u>. If the SES level manager believes the value of the service or information provided by the CS outweighs the risks of using that person, the SES level manager will approve the establishment, contingent upon receipt of any other necessary concurrence(s).

01-3 **AGENTS MANUAL 6-28-01**

DEA SENSITIVE

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

6612.32

2. <u>Disapproval</u>. If the SES level manager determines that the risks outweigh the investigative benefits, then the SES level manager will disapprove the Risk Assessment and the establishment process will be terminated.

01-3  AGENTS MANUAL  6-28-01

DEA SENSITIVE

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

6612.13

Not Responsive

6612.13 Risk Assessment Defined.  *A Risk Assessment weighs the liabilities of a prospective CS against the potential benefit that could accrue to DEA*.  The Risk Assessment is conducted by the Controlling Investigator at the time the CS is first considered for establishment and is reviewed by higher level authorities until establishment is approved.  Risk Assessments must also be conducted whenever information is received that alters the balance of "risk versus benefit."  The Risk Assessment process is described in detail in 6612.32.

*Revision

02-2 AGENTS MANUAL 4-24-02

DEA SENSITIVE

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

6612.32

Not Responsive

## 6612.32  Risk Assessment

A.  Controlling Investigators Responsibilities.  Prior to establishing an individual as a CS, the Controlling Investigators will conduct a risk assessment of the individual to determine if the individual is suitable for use as a CS.  Controlling Investigators will utilize the following factors in determining the suitability of a CS:

1.  Age;
2.  Criminal history;
3.  Involvement in any pending criminal investigation;
4.  Danger to the public; criminal threat (Controlling Investigators assessment)
5.  Flight risk; risk that CS may compromise investigation (Controlling Investigators assessment)
6.  U.S. residency status; alien status.
7.  History of alcohol or substance abuse;
8.  Relationship with an employee of any law enforcement agency;
9.  The individual's status as a public official, law enforcement officer, member of the military, a representative of the news media, or party to privileged communications (e.g., a member of the clergy, a doctor, a lawyer);
10. Reliability, truthfulness, and motivation; relationship to target(s) of investigation
11. Medical conditions/restrictions that may impact the utilization of the CS (e.g. heart condition, pregnancy, etc.).
12. Past or present performance as a CS for DEA or another agency; including prior record of any testimony (coordinate with OM).
13. The extent to which the CS's information can be independently corroborated.
14. Risk of physical harm to CS or CS's family/close associates as a result of information provided to DEA.
15. **Whether the CS is a union official, employee of a financial institution or school.
16. The extent to which the person would make use of his/her affiliations with legitimate organizations in order to provide information or assistance and the ability to ensure that the information or assistance is limited to criminal matters.**

B.  Suitability Statement.  Upon completion of this assessment, a brief statement will be developed which evaluates the potential benefit of using the CS, *and contrasts these benefits with any adverse information developed during the establishment process.  The Suitability Statement need not consist of more than one paragraph but must detail the specific benefits of

*Revision
**Addition

02-2 AGENTS MANUAL 4-24-02

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

6612.33

2. Disapproval.   *If the Second Line Supervisor determines that the risks outweigh the possible benefits of utilizing the CS, the process will be terminated*.

F. SES Level Manager Responsibilities.  *The SES level manager will review all Risk Assessments referred by the Second Line Supervisor*.

1. Approval.  If the SES level manager believes the value of the service or information provided by the CS outweighs the risks of using that person, the SES level manager will approve the establishment, contingent upon receipt of any other necessary concurrence(s).
2. Disapproval.  If the SES level manager determines that the risks outweigh the investigative benefits, the process will be terminated.

**G.   Confidential Source Coordinator Responsibility.  The CS Coordinator (CSC) will conduct a Confidential Source System (CSS) check for any CS establishment to determine if the CS has previously been a CS with DEA.  If the establishment of the CS is a reactivation, the CSC will check CSS to determine if the CS has approached his/her yearly or lifetime CAP for payment purposes.  If the CS to be reactivated has approached a CAP, the CSC **must** notify the First Line Supervisor**.

Not Responsive

*Revision
**Addition

02-2 AGENTS MANUAL 4-24-02

DEA SENSITIVE

Not Responsive

**6612.13 Risk Assessment Defined**

A Risk Assessment weighs the liabilities of a prospective CS against the potential benefit that could accrue to DEA. The Risk Assessment is conducted by the Controlling Investigator at the time the CS is first considered for establishment and is reviewed by higher level authorities until establishment is approved. Risk Assessments must also be conducted whenever information is received that alters the balance of "risk versus benefit." The Risk Assessment process is described in detail in 6612.32.

Not Responsive

Not Responsive

**6612.32 Risk Assessment**

(See Teletype 08802 dated August 22, 2006, Subject: Interim Policy Regarding the New DEA Form 512(A), CS Risk Assessment)

A. *Controlling Investigators Responsibilities.* Prior to establishing an individual as a CS, the Controlling Investigators will conduct a risk assessment of the individual to determine if the individual is suitable for use as a CS. Controlling Investigators will utilize the following factors in determining the suitability of a CS:

1. Age;
2. Criminal history;
3. Involvement in any pending criminal investigation;
4. Danger to the public; criminal threat (Controlling Investigators assessment)
5. Flight risk; risk that CS may compromise investigation (Controlling Investigators assessment)
6. U.S. residency status; alien status.
7. History of alcohol or substance abuse;
8. Relationship with an employee of any law enforcement agency;
9. The individual's status as a public official, law enforcement officer, member of the military, a representative of the news media, or party to privileged communications (e.g., a member of the clergy, a doctor, a lawyer);
10. Reliability, truthfulness, and motivation; relationship to target(s) of investigation
11. Medical conditions/restrictions that may impact the utilization of the CS (e.g. heart condition, pregnancy, etc.).
12. Past or present performance as a CS for DEA or another agency; including prior record of any testimony (coordinate with OM).
13. The extent to which the CS's information can be independently corroborated.
14. Risk of physical harm to CS or CS's family/close associates as a result of information provided to DEA.
15. **Whether the CS is a union official, employee of a financial institution or school.
16. The extent to which the person would make use of his/her affiliations with legitimate organizations in order to provide information or assistance and the ability to ensure that the information or assistance is limited to criminal matters.**

B. *Suitability Statement.* Upon completion of this assessment, a brief statement will be developed which evaluates the potential benefit of using the CS, *and contrasts these benefits with any adverse information developed during the establishment process. The Suitability Statement need not consist of more than one paragraph but must detail the specific benefits of utilizing the CS with the identified risk factors. This statement must explicitly provide the reason(s) for the determination to utilize this CS despite any adverse information developed. This statement will be included in the "Remarks Section" of the DEA-512.*

C. *Classification.* The Controlling Investigators will classify the prospective CS as detailed below:

1. *Approval Recommended.* The benefits of utilizing the CS clearly outweigh any negative factors that may exist and the CS is recommended for utilization. The Controlling Investigators will then forward the complete CS package to the First Line Supervisor for approval.
2. *Disapproval.* The Controlling Investigators determine that the negative factor(s) associated with the possible utilization of the prospective CS clearly outweigh any possible benefits that may be obtained as a result of the CS cooperation. If this determination is made, the establishment process will be terminated.

D. First Line Supervisor Responsibilities. The First Line Supervisor will review the Initial Debriefing Report and the DEA-512, with the Suitability Statement prepared by the Controlling Investigators. The First Line Supervisor will then make a determination as to the suitability of utilizing the prospective CS as detailed below:

1. *Approved/Approval Recommended.* If the First Line Supervisor believes that the CS is suitable for establishment, and the CS is a Regular Use CS, the First Line Supervisor may then authorize the establishment. If the CS is a Defendant CS, Restricted Use CS, or a Protected Name CS, the First Line Supervisor will forward the package to the Second Line Supervisor with a recommendation for approval.
2. *Disapproval.* *If the First Line Supervisor determines that the negative factor (s) clearly outweigh the potential benefits of using the CS, the First Line Supervisor will disapprove the utilization of the CS and the process will be terminated*.

E. *Second Line Supervisor Responsibilities.* *The following are responsibilities of the Second Line Supervisor:*

1. *Approved/Approval Recommended.* The Second Line Supervisor will review the file of the prospective CS including the Debriefing Report, the DEA-512, criminal history, and the results of all other indices checks. If the Second Line Supervisor approves the *CS Establishment*, and is authorized to approve the particular category of CS , the Second Line Supervisor will authorize the establishment, contingent upon the receipt of any other necessary concurrence(s). If the Second Line Supervisor is not authorized to approve the CS (domestic Protected Name CS or certain categories of Restricted Use CSs), the CS file will be forwarded to the appropriate SES level manager with a recommendation for approval.

2. *Disapproval.* *If the Second Line Supervisor determines that the risks outweigh the possible benefits of utilizing the CS, the process will be terminated*.

F. *SES Level Manager Responsibilities.* *The SES level manager will review all Risk Assessments referred by the Second Line Supervisor*.

1. *Approval.* If the SES level manager believes the value of the service or information provided by the CS outweighs the risks of using that person, the SES level manager will approve the establishment, contingent upon receipt of any other necessary concurrence(s).

2. *Disapproval.* If the SES level manager determines that the risks outweigh the investigative benefits, the process will be terminated.

**G. *Confidential Source Coordinator Responsibility.* The CS Coordinator (CSC) will conduct a Confidential Source System (CSS) check for any CS establishment to determine if the CS has previously been a CS with DEA. If the establishment of the CS is a reactivation, the CSC will check CSS to determine if the CS has approached his/her yearly or lifetime CAP for payment purposes. If the CS to be reactivated has approached a CAP, the CSC **must** notify the First Line Supervisor**.

Not Responsive

[WebSter Home] [Contents] [Search] [What's New] [Help] [Feedback]

From: DEA HQS WASHINGTON DC

Subj: INTERIM POLICY REGARDING THE NEW DEA FORM 512(A), CS RISK


RATEZYUW RUEABND3133 2341835-EEEE--RUDKIA RUEABND RUEABNE RUEHAC

RUEHAK RUEHAO RUEHBE RUEHBH RUEHBJ RUEHBK RUEHBO RUEHBR

RUEHBS RUEHBU RUEHBUL RUEHBY RUEHCP RUEHCV RUEHDG RUEHEG

RUEHFR RUEHFT RUEHGD RUEHGL RUEHAO RUEHGP RUEHGT RUEHHI

RUEHHK RUEHHO RUEHIL RUEHIT RUEHKG RUEHKL RUEHKO RUEHLH

RUEHLO RUEHLP RUEHMC RUEHMD RUEHME RUEHMIL RUEHML RUEHMO

RUEHMU RUEHNC RUEHNE RUEHNT RUEHOS RUEHOT RUFHPE RUEHPU

RUEHQT RUEHRD RUEHRL RUEHRO RUEHSA RUEHSG RUEHSJ RUEHSN

RUEHSO RUEHBP RUEHSW RUEHTC RUEHTG RUEHTH RUEHUL RUEHVI

RUEHNN RUEHNN RUEHCP RULSADT RUSBPW.

ZNY EEEEE

R 221743Z AUG 06


FM DEA HQS WASHINGTON DC

TO DEA WORLDWIDE

RUEABND/DEA GUAM ISLAND GU POD

RULSADT/NATIONAL DRUG INTELLIGENCE CENTER JOHNSTOWN PA

RUEHBUL/AMEMBASSY KABUL

RUEHHI/AMEMBASSY HANOI

RUEHVN/AMEMBASSY VIENTIANE


INFO DEA HQS WASHINGTON DC

BT

UNCLAS E F T O DEA 08802

QQQQ

SENSITIVE

NOFORN

POST FOR DEA ONLY


ATTN:  AMEMB MEXICO PLS PASS TO AMCONSUL MAZATLAN

        AMEMB ISLAMABAD PLS PASS TO AMCONSUL LAHORE


SUBJECT:  INTERIM POLICY REGARDING THE NEW DEA FORM 512(A), CS

RISK ASSESSMENT (DFN:  060-07.2)


1. THE DEPARTMENT OF JUSTICE, OFFICE OF INSPECTOR GENERAL (OIG),

CONDUCTED AN AUDIT OF THE DRUG ENFORCEMENT ADMINISTRATION'S

(DEA) PAYMENTS TO CONFIDENTIAL SOURCES (CS).  IN THE FINAL REPORT,

OIG ISSUED A FINDING THAT RECOMMENDED DEA AMEND THE AGENTS

MANUAL (AM) TO REQUIRE A WRITTEN RISK ASSESSMENT FOR CS

ESTABLISHMENTS.  THIS WOULD BE IN LIEU OF THE SUITABILITY

STATEMENT, AS DEFINED WITHIN AM 6612.32 PARAGRAPH B. THE

RATIONALE BEHIND THE OIG FINDING WAS TWOFOLD.  FIRST, THE

"ATTORNEY GENERAL GUIDELINES REGARDING THE USE OF

CONFIDENTIAL INFORMANTS" MANDATES THAT CS RISK ASSESSMENTS BE

DOCUMENTED IN WRITING AND, SECOND, DURING THE AUDIT OIG

OBSERVED THAT SOME FIELD DIVISIONS HAD DIVISIONAL ORDERS

REQUIRING WRITTEN RISK ASSESSMENTS WHILE OTHERS DID NOT.  NON-

UNIFORMITY, IN POLICY AND PROCEDURE, BECAME AN ISSUE.


2. EFFECTIVE IMMEDIATELY, THE NEW DEA FORM 512(A), CS RISK

ASSESSMENT WILL BE USED TO DOCUMENT ALL CS RISK ASSESSMENTS.

VARIOUS RISK ASSESSMENT FORMS CURRENTLY IN USE BY FIELD

DIVISIONS WILL BE OBSOLETE AND WILL NOT, REPEAT, WILL NOT BE

ACCEPTED FOR THE ESTABLISHMENT OF A CS.  THE NEW FORM IS

AVAILABLE IN JETFORMS AND THE FOLLOWING PROCEDURES WILL BE

ADHERED TO WITH RESPECT TO ITS USE:


A. FORM DEA-512(A) WILL BE PREPARED FOR EVERY CS ACTIVATION

REQUIRING A RISK ASSESSMENT CONSISTENT WITH AM SUBCHAPTER 6612.

AS PREVIOUSLY STATED, THIS WILL REPLACE THE REQUIREMENT FOR A

SUITABILITY STATEMENT (AM 6612.32 PARAGRAPH B).


B. FORM DEA-512(A) WILL BE SUBMITTED WITH THE DEA-512 TO THE

FIELD DIVISION OR REGIONAL CS COORDINATOR, WHO WILL IN TURN

INCLUDE IT WITH DEA-512'S SENT TO THE HEADQUARTERS COMMAND

CENTER AND EMERGENCY PREPAREDNESS SECTION FOR PROCESSING

WITHIN THE CONFIDENTIAL SOURCE SYSTEM.


3. REVISIONS REGARDING THE DEA-512(A) WILL BE MADE TO AM 6612.32,

RISK ASSESSMENT, WITHIN THE NEXT FEW MONTHS.  UNTIL THAT TIME,

THIS CABLE WILL SERVE AS INTERIM POLICY REGARDING CS RISK

ASSESSMENTS.


4. QUESTIONS REGARDING THIS MATTER MAY BE DIRECTED TO STEVEN

W. DERR, CHIEF, OFFICE OF OPERATIONS MANAGEMENT AT (202) 307-4200,

JAMES T. RAGAN, ACTING CHIEF, POLICY AND SOURCE MANAGEMENT

SECTION AT (202) 307-4200 AND/OR RONALD A. WOODS, UNIT CHIEF,

CONFIDENTIAL SOURCE UNIT AT (202) 307-7540.


MICHAEL A. BRAUN

CHIEF OF OPERATIONS

BT

[WebSter Home] [Contents] [Search] [What's New] [Help] [Feedback]

U. S. Department of Justice - Drug Enforcement Administration

# CONFIDENTIAL SOURCE RISK ASSESSMENT

1. Name of CS or Number:_____ Age of CS:_____

2. Does the CS have a criminal history? [   ] NO     [   ] YES    **(See attached printout)**

3. Is the CS involved as a defendant in a criminal prosecution or as a target in any pending criminal investigation?
   [   ] NO    [   ] YES

If yes, answer the following:

a. The pending investigation is **(Select one)**  [   ] Federal      [   ] State/Local     [   ] Foreign

b. Summarize the nature of the pending investigation.
_____
_____
_____

4. Does the CS have a history of being a danger to the public or a threat to engage in criminal behavior?
   [   ] NO     [   ] YES

If yes, summarize the known potential danger or criminal threat; and what action will be taken to minimize the risk:
_____
_____
_____

5. Does the CS have a record of being flight risk? [   ] NO   [   ] YES

If yes, summarize the identified risk; and what action will be taken to minimize the risk:
_____
_____
_____

6. The CS's U.S. residency status is **(Select one)** [   ] U.S. citizen    [   ] Permanent Resident   [   ] Alien  [   ] N/A

If the CS is not a U.S. citizen, indicate under what authority the CS is legally present: **(Select one)**

   [   ] B1/B2 Visa        [   ] Deferred Action       [   ] SPBP         [   ] S Visa          [   ] Other

If "Other", explain: _____
_____
_____

7. Does the CS have a record of alcohol or substance abuse? [   ] NO   [   ] YES

If yes, summarize the nature of the abuse history; and what action will be taken to minimize the risk:
_____
_____
_____

8. Has any information surfaced to indicate the CS has a relationship with an employee of any law enforcement agency? [   ] NO  [   ] YES

If yes, explain: _____
_____
_____

9. Is the CS a: public official; law enforcement officer; member of the military; representative of the news media; union official; employee of a financial institution; employee of a school; or party to privileged communications?
[   ] NO   [   ] YES

If the answer to any of the above is "Yes", explain the situation: _____

_____
_____
_____

10. Has the CS's reliability, truthfulness, and motivation to cooperate, and his/her relationship to target(s) of investigation been considered? [   ] NO   [   ] YES

11. Is the CS known to have any medical conditions/restrictions that may impact the utilization of the CS (e.g. heart condition, pregnancy, etc.)? [   ] NO   [   ] YES

If yes, explain the condition/restriction; and what action will be taken to minimize the risk:
_____
_____
_____
_____

12. Is the individual a past or present CS for DEA or another federal, state or local agency?
[   ] NO   [   ] YES

If yes, identify other agencies:_____
_____

Describe any negative past performance issues, e.g. lack of truthfulness, failure to follow direction, etc.; include any known instances in which the CS was found to have testified untruthfully, and/or been deactivated for unsatisfactory conduct: _____
_____
_____
_____

13. Can the CS's information be independently corroborated? [   ] NO   [   ] YES

14. Is there a known, increased, risk of physical harm to CS or CS's family/close associates as a result of information or cooperation provided to DEA ? [   ] NO   [   ] YES

If yes, explain the nature of the risk:_____
_____
_____
_____

15. Is it believed the CS will be required to make use of affiliations with legitimate organizations in order to provide information or assistance? [   ] NO   [   ] YES

If yes, explain the situation, and what action will be taken to minimize the risk:_____
_____
_____
_____

**If additional space needed, attach a separate sheet of paper.**

EXHIBIT 2

August 18, 2011


AUSA J. Cole Hernandez

USAO

405 W. Congress Ste. 4800

Tucson, AZ 85701-5040


Re: Pickard v. DOJ (4:11-CV-00442-DCB, D. Arizona)


Dear Mr. Hernandez:


On this date, an attempt was made by telephone to meet-and-confer in good faith with you in regard to the above-cited proceeding, but the call was declined. Hence, this correspondence is a second attempt to meet-and-confer in an effort to reduce the scope of the request, lessen the burden on DEA in conducting searches, and to obtain stipulations on these matters.


In view of the district court's order of August 9, 2011 for DEA to answer the complaint in Pickard v. DOJ (4:11-CV-00442-DCB, D. Arizona)(Pickard II, Doc. 45-1), it is requested that missing documents be provided and searches be narrowed as described in pgrs. 2-12 infra.


Hence, please note the following:


1. The April 7, 2010 FOIA request was for the following records:

Any an all records pertaining to the implementation and use of
DEA Agents Manual Sec. 6612.13, including but not limited to:

a. the eleven risk assessment factors described therein
concerning potential or prior DEA informants, cooperating
defendants/witnesses, or sources of information;

b. the specific DEA form and formatting utilized or required
for compliance with Sec. 6612.13 and the risk assessment
factors;

c. copies of Sec. 6612.13 and the related risk assessment
factors applicable in 2000-2001, and at any other time.

2. The DEA release of July 1, 2011 contained in part:

a. a "Supplemental Transmission" dated 6/28/01, containing an
"Explanation of Changes" (p. 1 of release).

b. the first revision of the Agents Manual to include Sec.
6612.13 (entitled "01-3 Agents Manual 6-28-01")(pp. 3-7 of
release).

c. a "Supplemental Transmission" dated 4/24/02, containing an
"Explanation of Changes" (p. 2 of release).

d. the second revision of the Agent's Manual to include Sec.
6612.13 (entitled "02-2 Agents Manual 4-24-02)(pp. 8-11 of

release).

e. the third revision (undated) of the Agents Manual to
include Sec. 6612.13, but stating: "See Teletype 08802 dated
August 22, 2006. Subject: Interim Policy Regarding the New DEA
Form 512(A), CS Risk Assessment" (pp. 12-14 of release).

d. a copy of the aforementioned August 22, 2006 Teletype 08802
itself (pp. 15-18 of release).

3. However, examination of the release indicate that specific
pages are missing, viz.:

a. the missing sections B, C, D, and E betwen pages 9-10 of
the FOIA release, describing "02-2 Agents Manual dated "4-24-
02."

b. the Table of Contents for the 6/28/01 revision referring to
Sec 6612.13.

c. the Table of Contents for the 4/28/02 revision referring to
Sec. 6612.13.

4. Additionally, the released records are responsive only in
part to the FOIA request subsection concerning "copies of Sec.
6612.13 and the related risk assessment factors applicable in
2000-2001, and at any other time" (see pgr. 1.a supra).

5. The release does not include the teletypes, cables,

memoranda, emails, or other directives describing the interim policy prior to the June 28, 2001 first revision of the Agents Manual to include Sec. 6612.13 (Cf. the 2006 Teletype at pp. 15-18).

6. The release does not include the teletypes, cables, memoranda, emails, or other directives describing the interim policy prior to the April 26, 2002 second revision of the Agents Manual and Sec. 6612.13.

7. Furthermore, the release does not respond fully to the request for "[a]ny and all records pertaining to the implementation and use of DEA Agents Manual Sec. 6612.13" (pgr. 1 supra).

8. Hence, in an effort to reduce the burden on DEA from an overbroad search for existing Sec. 6612.13 risk assessments at DEAHQ and field offices, it hereby is requested that this portion of the search ("[a]ny and all records pertaining to the implementation and use") be narrowed to records originating from the San Francisco DEA office relevant to federal informant Gordon Todd Skinner (CS-01-101938).

9. Importantly, Skinner's records are subject to FOIA in that Skinner has been officially confirmed as an informant by DEA as described in the July 27, 2011 decision by the 9th Circuit in Pickard v. DOJ, 2001 U.S. App. LEXIS 15397 (9th Circuit)(Pickard I), reversing and remanding the district court denial of the complaint concerning Skinner's records.

10. The July 1, 2011 release also did not include other responsive documents, viz. "the specific DEA form and formatting utilized or required for compliance with Sec. 6612.13 and the risk assessment factors" (see pgr. 1.b).

11. In a similar effort to reduce the burden on DEA from an overbroad search of DEA Headquarters and field offices for the various risk assessment forms in use prior to the August 22, 2006 teletype (pgr. 2.e-d supra) establishing a standard form, it is requested that this portion of the request ("the specific DEA form") be narrowed to records originating from the San Francisco DEA office in the period 2000-2001.

12. Please also note that records responsive to this portion of the request ("the specific DEA form") include Skinner's corresponding DEA Confidential Source Establishment form (DEA-512), in that the formal risk assessment is part of the DEA-512, as required by the first revision of the Agents Manual on June 28, 2001 to include Sec. 6612.13 (entitled "01-3 Agents Manual 6-28-01"), and stating: "Upon completion of this assessment, a [risk assessment suitability statement] will be included in the "Remarks Section" of the DEA-512." (6-28-01 Agent Manual Sec. 6612.32 Risk Assessment, subsection B ("Suitability Statement")(see page 5 of the July 1, 2011 release). Furthermore, assessment of the risk factors includes data thereafter duplicated on the DEA-512.

Thank you again for your prompt attention to these ongoing

matters. Please let me know if I may be if further

assistance.

Sincerely,

William L. Pickard

FRN 82687-011

POB 24550

Tucson, AZ 85734

```
***************************
***    Activity Report    ***
***************************
```

| ST. TIME | DESTINATION TEL/ID | NO. | MODE | | PGS. | RESULT | |
|----------|--------------------|-----|------|------|------|--------|------|
| 04/20 20:08 | 4149910 | 0001 | TRANSMIT | ECM | 1 | OK | 00'18 |
| 04/20 20:08 | 602 414 9910 | 5001 | Auto RX | ECM | 1 | OK | 00'21 |
| 08/01 10:07 | 5120 | 0002 | TRANSMIT | ECM | 1 | OK | 00'12 |
| 08/02 11:33 | | 5002 | Auto RX | ECM | 2 | OK | 01'04 |
| 08/23 11:25 | 95206207138 | 0003 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | 1 | | #0018 |
| 08/23 11:27 | 95206207138 | 0004 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | 1 | | #0018 |
| 08/23 11:28 | 915206207138 | 0005 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | 1 | | #0018 |
| 08/23 11:30 | 96207138 | 0006 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | 1 | | #0018 |
| 08/23 11:31 | 6207138 | 0007 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | 1 | | #0018 |
| 08/23 11:35 | 915206207138 | 0008 | TRANSMIT | ECM | 6 | OK | 01'13 |

```
****************************
***    ERROR TX REPORT    ***
****************************

        TX FUNCTION WAS NOT COMPLETED

        TX/RX NO                0003
        DESTINATION ADDRESS     95206207138
        DESTINATION ID
        ST. TIME                08/23 11:25
        TIME USE                00'00
        PAGES SENT                 0
        RESULT                  NG      # 0018 BUSY/NO SIGNAL   See #0008
```

August 18, 2011


AUSA J. Cole Hernandez

USAO

405 W. Congress Ste. 4800

Tucson, AZ 85701-5040


Re: Pickard v. DOJ (4:11-CV-00442-DCB, D. Arizona)


Dear Mr. Hernandez:


On this date, an attempt was made by telephone to meet-and-confer in good faith with you in regard to the above-cited proceeding, but the call was declined. Hence, this correspondence is a second attempt to meet-and-confer in an effort to reduce the scope of the request, lessen the burden on DEA in conducting searches, and to obtain stipulations on these matters.

In view of the district court's order of August 9, 2011 for

CERTIFICATE OF SERVICE

I hereby certify that on the _24th_ day of August, 2011, I
placed into institutional mail first-class postage prepaid the
original and a copy of the attached "Motion for Leave ..."
addressed to the Clerk of the Court, United States District
Court, District of Arizona, 405 W. Congress St., Tucson, AZ
85701, and one copy to AUSA Cole Hernandez at the same
address.


(signed)

William L. Pickard